UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Amber D.,[1]

           Plaintiff,                 Case No.  23-cv-730 (JWB/LIB)

v.                     **REPORT AND RECOMMENDATION**

Martin J. O'Malley,
Commissioner of Social Security Administration,

           Defendant.

      Plaintiff, Amber D. (hereinafter "Plaintiff"), seeks judicial review of the decision of the Commissioner of Social Security ("Defendant") denying her application for disability benefits. The matter is before the undersigned United States Magistrate Judge for disposition pursuant to 28 U.S.C. § 636 and Local Rules 7.2(a)(1). This Court has jurisdiction over the claims under 42 U.S.C. § 405(g).

      Pursuant to the Federal Supplemental Rules of Civil Procedure, which govern actions seeking judicial review of a decision of the Commissioner of Social Security, the present action "is presented for decision by the parties' brief." Fed. R. Civ. P. Supp. SS Rule 5. Plaintiff filed a brief requesting that the present action be remanded to the Social Security Administration. [Docket No. 12]. Defendant filed a brief asking this Court to affirm the underlying decision denying Plaintiff's request for benefits and to dismiss this action. [Docket No. 16].

      For the reasons discussed herein, the undersigned recommends that Plaintiff's request for relief, [Docket No. 12], be **DENIED**, and Defendant's request for relief, [Docket No. 16], be **GRANTED**.

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Report and Recommendation. Thus, when the Court refers to Plaintiff by her name only her first name and last initial are provided.

## I. BACKGROUND

On April 26, 2021, Plaintiff filed a Title XVI application for supplemental social security income. (Tr. 29, 37, 212).[2] In her application, Plaintiff alleged that her disability began on October 1, 2019. (Tr. 29, 212). The Commissioner initially denied Plaintiff's claims on July 8, 2021, and again, upon reconsideration, on November 3, 2021. (Tr. 29, 76-84, 85-94, 95). On December 1, 2021, Plaintiff filed a written request for a hearing before an Administrative Law Judge. (Tr. 29, 133-135).

Administrative Law Judge William G. Reamon (hereinafter "ALJ") conducted a telephonic hearing on March 4, 2022. Plaintiff testified at the initial hearing along with an independent vocational expert, Courtney Clem ("IVE Clem"). (Tr. 29, 45-75). At the hearing, Plaintiff was represented by Kelly Blad. (Tr. 14, 47).

On April 27, 2022, the ALJ issued a decision denying Plaintiff's request for supplemental social security income. (Tr. 29-39). The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 39).

Plaintiff thereafter sought review of the decision by the Appeals Council on June 6, 2022. (Tr. 1-10, 209-211). Subsequently, after granting Plaintiffs several extensions, the Appeals Council denied Plaintiff's request for review on January 27, 2023. (Tr. 1, 6-7, 8). As a result, the ALJ's decision became the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481.

---

[2] Throughout this Report and Recommendation, the Court refers to the Administrative Record, [Docket No. 11], by the abbreviation "Tr." The Administrative Record is consecutively paginated across 62 exhibits. (See Administrative Record [Docket No. 11]). Where the Court cites to the Administrative Record, it refers to the page numbers found in the bottom-right corner of these exhibits.

On March 25, 2023, Plaintiff filed this action. (Compl. [Docket No. 1]). Thereafter, this matter was presented to the Court for review pursuant to the parties' briefs, [Docket Nos. 12, 16], and the Court took the matter under advisement on the written submissions.

## II.  STANDARDS OF REVIEW

### A.  Administrative Law Judge's Five-Step Analysis

If a claimant's initial application for disability benefits is denied, they may request reconsideration of the decision. 20 C.F.R. §§ 404.907–404.909. A claimant who is dissatisfied with the reconsidered decision may then obtain administrative review by an administrative law judge ("ALJ"). 42 U.S.C. § 405(b)(1); 20 C.F.R. § 404.929.

To determine the existence and extent of a claimant's disability, the ALJ must follow a five-step sequential analysis. This analysis requires the ALJ to make a series of factual findings about the claimant's impairments, residual functional capacity, age, education, and work experience. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992). The Eighth Circuit has described this five-step process as follows:

> The Commissioner of Social Security [through the ALJ] must evaluate: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003).

### B.  Appeals Council Review

If the claimant is dissatisfied with the ALJ's decision, they may request review by the Appeals Council, although the Appeals Council need not grant that request for review. See 20 C.F.R. §§ 404.967–404.982. The decision of the Appeals Council (or, if the request for review is

3

denied by the Appeals Council, then the decision of the ALJ) is final and binding upon the claimant, unless the matter is appealed to federal court within sixty days after notice of the Appeals Council's action. See 42 U.S.C. § 405(g); 20 C.F.R. § 404.981. In this case, the Appeals Council declined to review the ALJ's decision, finding that Plaintiff was not disabled. (Tr. 1).

**C. Judicial Review**

Judicial review of the administrative decision generally proceeds by considering the decision of the ALJ at each of the five steps. Judicial review of the Commissioner's decision to deny disability benefits, however, is constrained to a determination of whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008); Tellez v. Barnhart, 403 F.3d 953, 956 (8th Cir. 2005); Buckner v. Apfel, 213 F.3d 1006, 1012 (8th Cir. 2000) ("We may reverse and remand findings of the Commissioner only when such findings are not supported by substantial evidence on the record as a whole."). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Buckner, 213 F.3d at 1012 (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)); see Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007).

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ. Hilkemeyer v. Barnhart, 380 F.3d 441, 445 (8th Cir. 2004). The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence. Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994). The Court should not reverse the Commissioner's finding merely because evidence may exist in the administrative record to support the opposite conclusion. Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

After balancing the evidence, if it is possible to reach two inconsistent positions from the evidence and one of those positions represents the Commissioner's decision, the Court must affirm the decision. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992). Thus, the Court will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008). The decision of the ALJ "is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." Id. "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009) (quotation omitted).

The claimant bears the burden of proving that she is disabled under the Social Security Act. See 20 C.F.R. § 404.1512(a); Whitman v. Colvin, 762 F.3d 701, 705 (8th Cir. 2014). Once the claimant has demonstrated she cannot perform any of her prior, relevant work due to a disability, the burden then shifts to the Commissioner to show that the claimant retains the residual functional capacity ("RFC") to engage in some other substantial, gainful activity. Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005).

**III. DECISION UNDER REVIEW**

The ALJ made the following determinations during the five-step disability evaluation process.

At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of January 28, 2021 (her application date). (Tr. 31). This finding is not in dispute. The Court will refer to the time period between Plaintiff's alleged onset date and the date of the ALJ's decision as "the adjudicated period."

At step two, the ALJ concluded that Plaintiff had "the following severe impairments: bipolar disorder; post-traumatic stress disorder (PTSD); substance use disorder; and asthma." (Tr. 31). Plaintiff does not challenge the findings made by the ALJ at step two.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 32). Specifically, the ALJ found that Plaintiff did not have any impairment or combination of impairments which met or medically equaled listings 12.04, or 12.15. (Tr. 32-34). Plaintiff does not challenge the ALJ's findings at step three.

At step four, the ALJ made the following RFC determination:

> [C]laimant has the residual functional capacity to perform a full range of work at all exertional levels but with nonexertional limitations. The claimant should avoid concentrated exposure to pulmonary irritants. The claimant is limited to simple and detailed instructions. The claimant is limited to occasional, brief, and superficial contact with coworkers and supervisors and should have no responsibilities for serving the public directly. The claimant can adapt to typical workplace changes. The claimant is precluded from fast-paced tasks with strict production quotas. Variably paced tasks with end of day production quotas would be acceptable.

(Tr. 34). Plaintiff challenges this RFC determination made by the ALJ.

In making this RFC determination, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms;" however, the ALJ also concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the ALJ's] decision." (Tr. 35). Plaintiff challenges this credibility determination by the ALJ.[3]

---

[3] "Social Security Ruling 16-3p eliminates the use of the term 'credibility' and clarifies that the Commissioner's review of subjective assertions of the severity of symptoms is not an examination of a claimant's character, but rather, is an examination for the level of consistency between subjective assertions and the balance of the record as a whole." Noerper v. Saul, 964 F.3d 738, 745 n.3 (8th Cir. 2020). SSR 16-3p applies to the present case, "but it largely changes terminology rather than the substantive analysis to be applied," and in discussing said determination, Courts have continued to use the "credibility" terminology. Noerper, 964 F.3d at, 745 n.3.

Based on his RFC determination and relying on the testimony from the independent vocational expert, IVE Clem, the ALJ determined that Plaintiff was unable to perform her past relevant work as composite jobs of waitress, information clerk, cleaner, and cook helper. (Tr. 37). However, the ALJ found that there were other jobs that existed in significant numbers in the national economy that Plaintiff, given her age, education, work experience, and RFC, could perform. (Tr. 38). Here again relying upon testimony from the independent vocational expert, IVE Clem, the ALJ specifically found that among the occupations Plaintiff would be able to perform were "machine feeder," of which there are approximately 18,000 positions in the national economy; "salvage laborer," of which there are approximately 51,000 positions in the national economy; and "merchandise packager," of which there are approximately 27,000 positions in the national economy. (Tr. 38). Although Plaintiff does not directly challenge the finding regarding available occupations to the Plaintiff with the ALJ's RFC at step four nor the alternative finding at step five, she implicitly challenges these findings in as much as they are based on the ALJ's RFC determination which Plaintiff does directly challenge.

The ALJ thus concluded that Plaintiff was not under a disability, as that term is defined by the Social Security Act, at any time during the adjudicated period. (Tr. 38-39).

**IV. Analysis**

In her memorandum, Plaintiff asserts one overarching argument in her appeal of the ALJ's decision: the ALJ's RFC determination is not supported by substantial evidence in the record. (See Plf.'s Mem. [Docket No. 12] at 7). Specifically, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to properly account for the opinions provided by the State Agency Consultants when the ALJ dismissed the opinion of Misty Eliason, MD, as unpersuasive. (Id. at 7-12).

7

The Commissioner contends that he is entitled to summary judgment, averring that Plaintiff's argument is unavailing. (Def.'s Mem. [Docket No. 16]). Defendant further contends that the ALJ's opinion is supported by substantial evidence in the record as a whole. (Def.'s Mem. [Docket No. 16]).

Although within the ALJ's administrative determinations, "a claimant's RFC is a medical question," and therefore, "an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." Combs v. Berryhill, 878 F.3d 642, 646 (8th Cir. 2017) (quoting Steed v. Astrue, 524 F.3d 872, 875 (8th Cir. 2008)). "[A]lthough medical source opinions are considered in assessing RFC, the final determination of RFC is left to the Commissioner [through the ALJ] based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." Noerper v. Saul, 964 F.3d 738, 745 (8th Cir. 2020) (first alteration in original) (internal citations omitted); see Combs v. Berryhill, 878 F.3d 642, 646 (8th Cir. 2017); Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004). An ALJ's RFC determination need not contain the specific wording of any specific medical opinion; instead, it is based on the ALJ's consideration of the relevant medical evidence in the record as a whole. See Noerper v. Saul, 964 F.3d 738, 745 (8th Cir. 2020).

In making the RFC determination, the ALJ need not defer or give any specific evidentiary weight to any medical opinion, including such opinion's from a primary treatment provider. 20 C.F.R. § 416.920c(a). Instead, the ALJ is required to consider supportability, consistency, relationship with the claimant, specialization, and other factors. See 20 C.F.R. § 316.920c(c)(1)-(5); see also Wiese v. Astrue, 552 F.3d 728, 731 (8th Cir. 2009). The most important factors for evaluating persuasiveness are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). Supportability examines the source's own records and explanations. 20 C.F.R. § 416.920c(c)(1).

8

Consistency addresses the extent to which the opinion aligns with evidence from other sources. 20 C.F.R. § 416.920c(c)(2). "Stated more simply, an opinion is more persuasive if it is more consistent with the overall evidence as a whole." Guetzloff v. Kijakazi, No. 2:20-cv-04177-NKL, 2021 WL 5157487, at *6 (8th Cir. 2021) (quoting Morton v. Saul, No. 2:19-CV-92, 2021 WL 307552, at *7 (E.D. Mo. Jan. 29, 2021)).

In making the RFC determination, the ALJ has a duty to sufficiently develop the record to permit meaningful review on appeal. See Noerper v. Saul, 964 F.3d 738, 747 (8th Cir. 2020). This duty to develop the record "arises from the simple fact that the disability determination process is not an adversarial process," and thus, the duty to develop the record "exists alongside the claimant's burden to prove [her] case." Id. This duty to sufficiently develop the record requires an ALJ to explain how they "considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical finding in [the decision]" 20 C.F.R. § 404.1520c(b)(2); accord 20 C.F.R. 404.1520c(b)(2). However, the "ALJ is not required to articulate how [he] considered each medical opinion or finding from one medical source individually." Frederick v. Kijakazi, No. 1:20-cv-00234, 2023 U.S. Dist. LEXIS 179026, at *23-24 (D.N.D. Aug. 10, 2023); see also 20 C.F.R. § 404.1520c(b)(2).

In addition, "supportability," "consistency," and "inconsistency" are not magic terms that the ALJ is required to use. See Gayla J. C. v. Kijakazi, 2022 WL 4017504, at *9 (D. Minn. Sept. 2, 2022) (inconsistency); Goss v. Kijakazi, 2022 WL 1511521, at *3 (E.D. Ark. May 12, 2022) (supportability and consistency) (citing Diane M.W. v. Kijakazi, 2022 WL 4377731, at *5 (D. Minn. Sept. 22, 2022)). In fact, "[n]o talismanic language is required for the ALJ to meet the requirements of § 404.1520c, only that the ALJ make it clear that they considered the supportability and consistency of an opinion." Tracey L.W. v. Kijakazi, No. 21-cv-2441-TNL, 2023 WL 2600217, at *6 (D. Minn. Mar. 22, 2023) (citing Mario O. v. Kijakazi, No. 21-cv-2469

9

(NEB/ECW), 2022 WL 18157524, at *11 (D. Minn. Dec. 13, 2022)); Trosper v. Saul, 2021 WL 1857124, at *6 (E.D. Mo. May 10, 2021) (finding "[w]hen the decision is read in its entirety, instead of only the single paragraph addressing [the provider's] opinion read in isolation, it shows the ALJ properly considered the record evidence as whole when evaluating the supportability and consistency of the opinion."). Instead, the Eighth Circuit has held that an "ALJ's reasoning need only be clear enough to allow for appropriate judicial review." Grindley v. Kijakazi, 9 F.4th 622, 631 (8th Cir. 2021).

The ALJ considered Dr. Eliason's opinions in his discussion regarding Plaintiff's RFC. (Tr. 37, 1488-92). The ALJ discussed that in "mid-2021, the [Plaintiff] continued to have impaired attention and concentration of mental status exams." (Tr. 36; see Tr. 1432, 1454). The ALJ further discussed that around this time, Plaintiff's medical evidence indicates that "she was sober for 8 months and her bipolar disorder was well controlled." (Tr. 36, 1468). Indeed, Plaintiff's July 2021 progress notes referenced by the ALJ report that she "feel[t] her mental health was well controlled." (Tr. 1468). However, as the ALJ pointed out, these progress notes conflicted with Dr. Eliason's August 5th, 2021, assessment. (See Tr. 1491).

Dr. Eliason's August 5th assessment reported that Plaintiff's mental health "has prevented her from sustaining competitive employment." (Tr. 1491). In addition, Dr. Eliason provided Plaintiff with a letter stating her opinion that Plaintiff did not have the "ability to sustain competitive employment." (Tr. 1492). The ALJ incorporated these conclusions into his RFC analysis. (See Tr. 37). For example, the ALJ noted that "[w]hile the [Plaintiff's] chemical dependency worsened her mental health, [her] bipolar disorder alone negatively impacted her ability to sustain competitive employment." (Id.). Indeed, the ALJ remarked that Dr. Eliason "assessed marked limitations in the [Plaintiff's] ability to maintain regular attendance, perform activities within a schedule, perform at a consistent pace and respond appropriately to criticism

10

from supervisors." (Id.). Finally, the ALJ noted that Dr. Eliason opined that Plaintiff had "an extreme limitation in the claimant's ability to tolerate normal levels of stress" and that Plaintiff "would be absent more than [three] days per month." (Id.).

However, the ALJ also cited records that indicated that when questioned, Plaintiff was "unsure" as to "why she [could not] sustain employment," yet Plaintiff still requested an opinion letter from her healthcare provider specifying her disabilities and stating why she could not sustain employment. (See Tr. 1502). In addition, the ALJ pointed out that in November of 2021, Plaintiff "had a normal mental status exam." (Tr. 37, 1519). The ALJ also highlighted that by February of 2022, Plaintiff's medical records indicated that while her mood was still anxious,[4] her mental status exam findings were normal, and she was looking for a job. (Tr. 37,1526, 1529). Furthermore, the same medical assessment stated that it had been seven months since Plaintiff saw her psychiatrist, and she reported being stable and sober. (Id.). This improved condition was reflected by the fact that Plaintiff was now seeing her kids every weekend as well as every other Wednesday, which reflected increased visitation compared to 2020 when she only saw her children every other week. (Tr. 37, 1526, 587).[5] Given the record before the ALJ, he ultimately concluded that Dr. Eliason's was not persuasive. (Tr. 37). Instead, the ALJ found that Plaintiff's treatment notes showed "the [Plaintiff's] steady improvement with sobriety and medication compliance, and support that the [Plaintiff] is capable of functioning within the limitations provided by the residual functional capacity." (Tr. 37).

The ALJ's decision focused heavily on this trajectory of upward improvement and pointed out that in early 2020, Plaintiff was hospitalized and placed on civil commitment for chemical dependency and mental illness. (Tr. 36, 316). In October of that same year, Plaintiff was

---

[4] Plaintiff noted that her anxiety was increased largely due to financial struggles, and Dr. Eliason increased her prescription for Zoloft which helped her Plaintiff's Nightmares. (Tr. 1529).
[5] One of Plaintiff's treatment goals was to obtain custody of her children. (Tr. 632).

11

hospitalized because she went off her medications and had a methamphetamine relapse. (Tr. 36, 819). Indeed, Plaintiff had three psychiatric hospitalizations during that year, which continued intermittent dysphoria and anxiety, episodic disassociation, and dependence on multiple medications. (Id.). The ALJ noted that Plaintiff continued to use methamphetamines until, at the end of 2020, she was admitted into medium-intensity residential treatment, from which she was discharged in February 2021. (Tr. 36, 632, 635, 685, 812). The ALJ further emphasized records that showed that from the time Dr. Eliason began seeing Plaintiff, she had witnessed a marked improvement in Plaintiff, describing her as "doing the best she had heard from her in a long time and that [Plaintiff] agreed with this." (Tr. 36, 653).

Plaintiff's challenges the ALJ's discussion of Dr. Eliason's opinions. (See Plf.'s Memo. [Docket No. 12]; Plf.'s Reply Memo. [Docket No. 17]). Plaintiff avers that the ALJ failed to explain how the supportability and consistency factors impacted the overall persuasiveness of Dr. Eliason's opinion. As discussed above, while the ALJ is required to explain his reasoning to allow for appropriate judicial review, no talismanic language is required for the ALJ to address the supportability factors under § 416.920c. See Tracey, No. 21-cv-2441-TNL, 2023 WL 2600217, at *6-7. Here, the ALJ properly concluded that the opinions were inconsistent with Plaintiff's improvement with treatment and sobriety. (Tr. 37). Such improvement was marked both by Dr. Eliason's own treatment notes (supportability) and evidence from other sources (consistency) (Tr. 37). As such, the Court finds that the ALJ properly considered both the consistency of Dr. Elisson's opinion as well as the supportability of her opinion.

Plaintiff concedes that the ALJ did directly cite evidence from Dr. Elisson's opinion; however, Plaintiff avers that the "evidence was either carefully selected or was misrepresentative of the whole. (Plf.'s Reply Memo. [Docket No. 17] at 3). For example, Plaintiff explains that the notes from Dr. Elisson documenting that Plaintiff was doing well should not be weighed against

12

evidence that demonstrates Plaintiff's issues with irritability, mood liability, pressured speech, racing thoughts, decreased need for sleep, excessive worrying, anxiety, and depression. (Id.). Plaintiff asserts that "it is not unusual for an individual with mental health disorders to have good days and bad days and for their symptoms to fluctuate." (Id.). As such, Plaintiff asks the Court to find that the treatment note referenced by the ALJ concerning Plaintiff's improvement should not be persuasive. (Id.). In addition, Plaintiff requests that the Court consider that Dr. Eliason's opinions regarding Plaintiff's mental health impairments are extensive and that, in Plaintiff's opinion, her notes support her treatment of Plaintiff's severe impairments. (Id.).

The Court finds that Plaintiff's argument is an invitation to reweigh the evidence and substitute the Court's opinions or findings for those of the ALJ. The Court decliines such an invitation. See Buckner, 213 F.3d at 1012 ("We may reverse and remand findings of the Commissioner only when such findings are not supported by substantial evidence on the record as a whole."). Instead, the Court finds that the ALJ's denial of benefits was within the available zone of choice. See Bradley, 528 F.3d at 1115 (the court will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice'"); see also Medhaug, 578 F.3d at 813 ("If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision."). As such, the Court will not reweigh the evidence that was presented nor substitute its opinions or findings for those of the ALJ supported by substantial evidence in the record as a whole. See Schmitt v. Kijakazi, 27 F.4th 1353, 1361 (8th Cir. 2022).

## V. CONCLUSION

The Court's review of the record indicates that the ALJ's RFC determination is supported by substantial evidence in the record as a whole. In addition, the Court's review of the ALJ's determination properly shows that the ALJ properly considered both the consistency and

13

supportability of Dr. Elisson's opinion. Accordingly, the undersigned recommends that Plaintiff's Motion seeking the Court to reverse the ALJ's decision and remand this case for further proceedings be **DENIED**.

Therefore, based on the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED THAT**:

1. Plaintiff's request for relief, [Docket No. 12], be **DENIED** and;

2. Defendant's request for relief, [Docket No. 16], be **GRANTED**.


Dated: July 29, 2024                                                         s/Leo I. Brisbois
                                                                                              Hon. Leo I. Brisbois
                                                                                              United States Magistrate Judge


**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).