## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Amber D.,[1]                                          Case No. 23-CV-00730 (JMB/LIB)

                    Plaintiff,

v.                                                               **ORDER**

Martin J. O'Malley,
*Commissioner of Social Security Administration*,

                    Defendant.

_____

Edward C. Olson, Reitan Law Office, Minneapolis, MN, and Clifford Michael Farrell, *pro hac vice*, Manring & Farrell, Dublin, OH, for Plaintiff Amber D.

Ana H. Voss, United States Attorney's Office, Minneapolis, MN, for Defendant Martin J. O'Malley.

_____

     This matter is before the Court on the Report and Recommendation (R&R) of United States Magistrate Judge Leo I. Brisbois dated July 29, 2024, which recommends denying Plaintiff Amber D.'s. appeal of the Commissioner of Social Security Martin J. O'Malley's (the Commissioner's) denial of her application for supplemental security income (SSI). (Doc. No. 19.) Plaintiff timely objected to the R&R and the Commissioner responded. (Doc. Nos. 20, 21.) For the reasons addressed below, the Court overrules Plaintiff's objections and adopts the R&R.

_____

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental party in Social Security orders.

1

**BACKGROUND**

The factual background for this matter is set forth in the R&R and is incorporated here by reference. Further, because the R&R provides a detailed procedural history, the Court only briefly summarizes it here.

Plaintiff filed an application for SSI on grounds that she was disabled, as defined in the Social Security Act (SSA). An administrative law judge (ALJ) held a hearing to review Plaintiff's claim. At the hearing, Plaintiff presented evidence that she has been diagnosed with conditions including bipolar disorder, post-traumatic stress disorder (PTSD), substance use disorder, and asthma. (Doc. No. 11 at 39.)

The ALJ followed the five steps set forth in 20 C.F.R. § 404.1520(a)(4)(i)–(v), determining the following: (1) Plaintiff had not engaged in "substantial gainful activity" since the application date; (2) Plaintiff had severe impairments including bipolar disorder, PTSD, substance use disorder, and asthma; (3) Plaintiff had no impairments that met the criteria of listed impairments for disability benefits under 20 C.F.R. Part 404, Subpart P, App'x 1; (4) Plaintiff had the residual functional capacity (RFC) to perform a full range of work subject to some nonexertional limitations; and (5) Plaintiff could work available jobs based on her RFC, age, education, and work experience. (Doc. No. 11 at 35–43.) Based on these findings, the ALJ concluded that Plaintiff was not entitled to SSI benefits.

Plaintiff sought judicial review of the decision. The Magistrate Judge recommends that Plaintiff's request for relief should be denied. Plaintiff timely objected to the R&R.

## DISCUSSION

Plaintiff objects to the R&R, disputing the ALJ's determination that Plaintiff's expert medical opinion was not persuasive for purposes of evaluating Plaintiff's RFC. (Doc. No. 20 at 2.)  Because the ALJ properly assessed the medical opinion at issue, the Court overrules the objection.

The RFC is defined as the upper limit of a claimant's ability given the claimant's mental and physical impairments.  20 C.F.R. § 404.1545(a); *see also Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001) ("Residual functional capacity . . . is defined as what the claimant can still do despite his or her physical or mental limitations") (quotation omitted). ALJs are directed to determine a claimant's RFC based on "all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (quotation omitted).  The RFC determination is a medical question, *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016), and the ALJ may consider the opinions of medical professionals, but the ALJ need not give deference or controlling weight to any one medical opinion.  20 C.F.R. § 416.920c(a).  Rather, it is the ALJ's express task to evaluate the persuasiveness of the medical evidence submitted.  *Id.*  In doing so, the ALJ considers certain factors, including supportability, consistency, the medical professional's relationship with the claimant, and the medical professional's area of specialization.  *Id.* § 416.920c(a), (c).  It is the first two factors—supportability and consistency—which ALJs are instructed to give the greatest weight when assessing the persuasiveness of medical opinions.  *Id.* § 416.920c(b)(2).

3

When considering a party's objections to an R&R, the Court conducts a de novo review of the record to determine whether substantial evidence supports the ALJ's decision. 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance," but enough for a reasonable mind to find adequate to support the ALJ's conclusion. *Cox. v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006) (quotation omitted). When reviewing the record for substantial evidence, the Court cannot substitute its own judgment or findings of fact for those of the ALJ. *Hilkemeyer v. Barnhart*, 380 F.3d 441, 445 (8th Cir. 2004). Nor will a reviewing court disrupt the ALJ's determinations of credibility and weighing of conflicting evidence. *See Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (2018) ("This court will not substitute its opinion for the ALJ's, who is in a better position to gauge credibility and resolve conflicts in evidence.") (citation omitted). When the record includes conflicting evidence that could support contrary outcomes, reviewing courts will not reverse the ALJ, even if that court would have decided the case differently. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000); *see also e.g.*, *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008) (noting that court will not reverse ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice'"); *Culbertson v. Shalala*, 39 F.3d 934, 939 (8th Cir. 1994) (noting that the possibility that a court could draw two inconsistent conclusions from the same record does not preclude a determination that substantial evidence supported the Commissioner's decision).

Here, the ALJ considered medical evidence in several forms, including Plaintiff's treatment records, evidence regarding Plaintiff's symptoms, and relevant medical assessments. Ultimately, the ALJ concluded that the medical opinion submitted by Misty

4

Eliason, M.D., Plaintiff's expert psychiatrist, was unpersuasive.  Plaintiff raises a single objection to this conclusion, contending that the ALJ's assessment was flawed because the ALJ "failed to consider the fluctuating nature of [Plaintiff's] mental health conditions." (Doc. No. 20 at 3.)  The Court disagrees and concludes that the ALJ properly considered both the supportability and consistency of Eliason's medical opinion.  (Doc. No. 11 at 41.)

In evaluating supportability, the ALJ noted discrepancies between Eliason's own treatment notes and her proffered opinion.  The ALJ reviewed Eliason's treatment notes from appointments with Plaintiff in March 2021, April 2021, May 2021, June 2021, July 2021, November 2021, and February 2022.  (*Id.* at 40–41).  While Plaintiff continued to display mild impairments in attention, the ALJ found that Eliason's treatment notes and accompanying records displayed an overall trend of "steady improvement."  (*Id*. at 41.)  In the year following Plaintiff's rehabilitation treatment, the records documented marked accomplishments by Plaintiff including successful maintenance of her sobriety, positive responses to medication, increased parenting time, beginning to look for employment, and routinely receiving normal mental status exams.  (*Id.* at 37–39.)

Eliason's contemporaneous assessments support the ALJ's finding of steady improvement.  The ALJ references treatment notes from March 2021 in which Eliason reflects that Plaintiff was "doing the best the psychiatrist had seen in a long time."  (*Id.* at 40.)  In April 2021, Eliason's notes again reflect that Plaintiff was doing the best Eliason had seen in a long time.  (*Id.*)  This pattern appeared to continue throughout the rest of the spring and summer as Plaintiff's mental status examinations consistently reflected normal functioning despite some impairments in concentration and one report of an anxious mood.

5

(*Id*. at 41.)  These largely positive monthly reports contrast with Eliason's ultimate medical opinion that Plaintiff was not able to engage in competitive employment due to her bipolar disorder.  (*Id*.)  Eliason identified "marked limitations" in Plaintiff's abilities to maintain regular attendance, perform at a consistent pace and respond appropriately to criticism from supervisors.  (*Id.*)  Eliason also believed that Plaintiff lacked the ability to tolerate a normal level of stress, but Eliason furnished no explanation as to why her evaluation appeared to differ from the indications of increased functionality reflected in her treatment notes.  (*Id.*)  The ALJ reasonably credited the observations of Eliason contained in her contemporaneous treatment notes, which provide an evidentiary basis to discount the portions of Eliason's conclusions that Plaintiff now emphasizes.

The ALJ also compared Eliason's opinion to available evidence from other sources to assess its consistency.  The ALJ considered the medical opinion of a state agency consultant who reviewed Plaintiff's medical records as well as Plaintiff's own statements regarding symptoms.  The consultant identified a mild limitation in Plaintiff's ability to understand, remember, and apply information, and a moderate limitation in her ability to interact with others, but concluded that these limitations did not entirely bar Plaintiff from the workforce.  (*Id*. at 40.)  The ALJ found the consultant's assessment to be persuasive given the consultant's comprehensive review of relevant evidence as well as the consultant's "special knowledge in assessing impairments within the SSA disability standard" and the fact that the opinion was found to be "consistent with the record as a whole."  (*Id*.)  The ALJ also considered records indicating that, when asked, Plaintiff was "unsure" why she would not be able to work.  (Doc. No. 11-1 at 80.)

6

Upon finding Eliason's medical opinion unsupported and inconsistent, the ALJ declined to accept Eliason's conclusions when making the ultimate RFC determination. The Court agrees that the evidence identified by the ALJ when making an assessment of persuasiveness does not support and is not consistent with Eliason's ultimate conclusions. Where substantial evidence supports the ALJ's determination, the Court will not reweigh conflicting evidence or substitute its own findings for those of the ALJ. *See, e.g.*, *Buckner*, 213 F.3d at 1012. Given the applicable standards of review, the Court is compelled to adopt the R&R.

Plaintiff urges this Court to reach a different result, relying on *Garrett ex rel. Moore v. Barnhart*, 366 F.3d 643 (8th Cir. 2004) and *Xia Moua L. v. Saul*, No. 20-CV-692-KMM, 2021 WL 1967739 (D. Minn. May 18, 2021) for the proposition that an ALJ cannot discount an expert opinion's persuasiveness based on discrete instances of improvement in a person's fluctuating mental health. The cases that Plaintiff cites, however, are distinguishable from the record presented here. In *Garrett*, the court found the ALJ's decision inadequate for, among other errors, mischaracterizing the frequency, gravity, and severity of the claimant's suicide attempts. 366 F.3d at 652. In *Xia Moua,* the court criticized the ALJ for focusing improperly on "brief periods" when Plaintiff's functioning was at its best while ignoring "[o]verwhelming evidence on the record" regarding Plaintiff's limitations. 2021 WL 1967739, at *1–2.

Unlike in *Garrett* and *Xia Moua*, the ALJ here did not mischaracterize evidence or focus on misleading isolated occurrences to the exclusion of overwhelming evidence. Rather, as noted above, the ALJ considered evidence of Plaintiff's steady and consistent

improvement over time following her release from treatment. The ALJ noted setbacks in Plaintiff's recovery, including reports of anxiety and impairments in concentration. (Doc. No. 11 at 41.) Ultimately, the ALJ relied on evidence indicating a trajectory of steady improvement, such as Plaintiff's success in sobriety and positive responses to medication, while also accounting for fluctuations in Plaintiff's impairments within its RFC findings and order, which limits Plaintiff to occasional, brief, and superficial contact with coworkers and supervisors and precludes Plaintiff from responsibilities serving the public directly. (*Id*. at 38.) Courts consistently approve such reasoning. *See, e.g.*, *Hensley*, 829 F.3d at 932 (accepting the RFC and explaining "there is no requirement that an RFC finding be supported by a specific medical opinion"); *Julin v. Colvin*, 826 F.3d 1082, 1089 (8th Cir. 2016) (finding that the ALJ "permissibly declined to give controlling weight" to a medical opinion in record); *Juszczyk v. Astrue*, 542 F.3d 626, 633 (8th Cir. 2008) (upholding ALJ's RFC determination where "the ALJ engaged in a realistic assessment of [claimant's] abilities").

**ORDER**

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED that:

1.       Plaintiff Amber D.'s objections to the July 29, 2024 R&R (Doc. No. 20) are OVERRULED;

2.       The July 29, 2024 R&R is ADOPTED; and

3.       This matter is DISMISSED.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated:  September 9, 2024               /s/ *Jeffrey M. Bryan*
                                              Judge Jeffrey M. Bryan
                                              United States District Court